UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EBONY L. BROWN,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

19-CV-6298-LJV
DECISION & ORDER

On April 23, 2019, the plaintiff, Ebony L. Brown, brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On September 16, 2019, Brown moved for judgment on the pleadings, Docket Item 8; on January 21, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on February 11, 2020, Brown replied, Docket Item 16.

For the reasons stated below, this Court grants Brown's motion in part and denies the Commissioner's cross-motion.[1]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Brown argues that the ALJ erred in three ways. Docket Item 8-1 at 1. She first argues that "[t]he ALJ ignored and failed to weigh two treating opinions." *Id.* She next argues that "[t]he ALJ failed to properly evaluate [the] opinions [of a treating physician and treating physician's assistant] pursuant to the treating physician rule." *Id.* And she finally argues that "[t]he ALJ committed reversible step two error when he found [her] headaches nonsevere and failed to consider their functional effect when determining [her] RFC." *Id.* This Court agrees that the ALJ erred and therefore remands the matter to the Commissioner.

## I. TREATING PHYSICIAN RULE

When determining a claimant's residual functional capacity ("RFC"), an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also* *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, the ALJ found that Brown has the RFC to

> perform light work[2] except [that she] is limited to sitting, standing[,] and/or walking for a total of six hours each during and [sic] eight hour work day. She is limited to occasionally climbing ramps and stairs, and occasionally bending, stooping, kneeling, crouching[,] and crawling. She is limited to never climbing ladders[,] ropes[,] and scaffolds. She is limited to frequent bilateral handling. She must avoid concentrated exposure to vibration and even moderate exposure to hazards. She is limited to moderate noise environments . . . . She is able to understand, remember, and apply information and focus on and complete simple work-related tasks. She is able to maintain concentration, persistence, or pace for simple work activities and manage simple social changes. She is able to adapt to routine changes and manage herself.

Docket Item 7 at 78 (footnote added). In formulating Brown's RFC, the ALJ "afforded partial weight" to the opinion of Brown's primary care physician, Berthollet Bavibidila, M.D.,[3] while giving "great weight" to the opinion of a medical consultant who merely reviewed Brown's records, J. McWatters, M.D. *Id.* at 80. The ALJ did not explicitly consider the opinion of Brown's treating neurologist, Clifford Meyers, M.D.

### A. Dr. Meyers's Opinion

On January 11, 2016, Dr. Meyers opined about Brown's functional limitations. Docket Item 7 at 469-75. By that time, Dr. Meyers had treated Brown for "sharp pain

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

[3] The ALJ incorrectly spelled Dr. Bavibidila's name as "Berthoilet Bauibida" and incorrectly identified the date of the opinion as December 2017 instead of September of that year. Docket Item 7 at 80.

behind the right ear" and "bilateral hand pain" during two visits over the course of approximately two-and-a-half months. *Id.* at 469. Dr. Meyers stated that he had "[n]o physical findings" to report; "subjective pain complaints only." *Id.* at 457-65, 474; *see also id.* at 470 (noting "no impairments or objective findings other than pain"). He opined that Brown had no limitations in lifting, carrying, standing, walking, sitting, pushing, or pulling. *Id.* at 474. He stated, however, that she should "[a]void excessive repetitive hand movements (e.g. typing)." *Id.* at 475.

The ALJ did not explicitly address Dr. Meyers's opinion. He noted, however, that Dr. Bavibidila's opinion was "inconsistent with that of the treating neurologist who stated that [Brown] presented with no physical findings, but rather only subjective complaints with no limitations." *Id.* at 80. Although the ALJ cited an incorrect exhibit, this Court infers from the content that he must have been referring to Dr. Meyers.

Brown argues that the ALJ erred in failing to address Dr. Meyers's opinion. In addition, Brown contends that Dr. Meyers's admonition to "[a]void excessive repetitive hand movements" is inconsistent with the ALJ's finding that Brown could perform "frequent bilateral handling," *see id.* at 78, and that the ALJ should have explained this discrepancy. This Court agrees.

As explained above, "an ALJ must evaluate every medical opinion received" in determining the RFC, 20 C.F.R. § 416.927(c), and this is especially true of the opinions of treating physicians, *see id.* § 404.1527(a)(2), (c)(2). Although the ALJ obliquely referred to Dr. Meyers's opinion, he did not address it explicitly. More importantly, the ALJ did not address why Dr. Meyers's recommendation that Brown "[a]void excessive repetitive hand movements" was consistent with the ALJ's determination that Brown

could perform "frequent bilateral handling"—or, if it was not consistent, why the ALJ rejected that portion of Dr. Meyers's opinion.

The Commissioner argues that "[u]nder SSA agency policy, the term 'frequently' translates to only one-third to two-thirds of a workday, and thus[,] . . . the ALJ's limitation of [Brown] to frequent bilateral handling adequately accounts for Dr. Meyers's opinion that she should avoid 'excessive repetitive' hand movements." Docket Item 15-1 at 21. According to the Commissioner, Dr. Meyers's opinion "would instead be more consistent with 'constant' hand use (i.e., two-thirds or more of an eight-hour workday)." *Id.* at 21-22.

Had the ALJ given such an explanation, that may well have been sufficient; but the ALJ did not do so. *See McFarland-Deida v. Berryhill*, No. 17-CV-6534-FPG, 2018 WL 1575273, at *4 (W.D.N.Y. Apr. 2, 2018) ("Although the Commissioner provides several reasons why she thinks the ALJ properly determined that [the plaintiff] could frequently reach, handle, and finger bilaterally despite Dr. Toor's contrary opinion, the ALJ's decision did not give any of these reasons."); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept . . . counsel's *post hoc* rationalizations for agency action."). Nor is it obvious to the Court that performing a task for up to two-thirds of the workday is outside the scope of "excessive repetitive . . . movements."

Finally, and in any event, the ALJ did not "explicitly address" the *Burgess* factors as the Second Circuit requires. *See Estrella,* 925 F.3d at 95-96. Thus, the Court finds that the ALJ erred in failing even to consider Dr. Meyers's opinion—let alone give it the deference it was due.

**B. Dr. Bavibidila's Opinion**

On September 25, 2017, Dr. Bavibidila issued an opinion on Brown's functional capacity. Docket Item 7 at 481-84. Dr. Bavibidila had been treating Brown since 2015. *See id.* at 412. In fact, Dr. Bavibidila saw Brown six times in the twelve-month period prior to issuing the September 2017 opinion, *see id.* at 481, and at least four other times before that, *see id.* at 412-52.

Dr. Bavibidila opined that Brown had tenderness in both knees with joint instability and decreased mobility and that she was limited to walking for 2-4 hours in an eight-hour workday, standing for 2-4 hours in an eight-hour workday, and sitting for 2-4 hours in an eight-hour workday. *Id.* at 484. Dr. Bavibidila further opined that Brown was limited to pushing, pulling, and bending for 1-2 hours in an eight-hour workday and was limited to lifting and carrying for 1-2 hours in an eight-hour workday. *Id.*[4]

As noted above, the ALJ "afforded partial weight" to Dr. Bavibidila's opinion. *Id.* at 80. The ALJ explained that the opinion was "consistent with [Brown] having limitation due to pain and decreased mobility. However, while the underlying treatment notes document multiple subjective complaints, the objective physical findings of record made during and for the course of treatment do not support the level of functional deficit in this opinion." *Id.* The ALJ added that "[t]he opinion is also inconsistent with that of the

[4] Dr. Bavibidila also completed a report on Brown's functional capacity in March 2017. Docket Item 7 at 489. That report indicated that Brown could walk for 2-4 hours per day. *Id.* It did not clearly indicate how long she could stand, sit, push, pull, bend, lift, or carry, but it has an illegible handwritten note next to "1-2 hours" for each of those functions. *Id.* Although Brown argues that the ALJ erred in failing to consider Dr. Bavibidila's March 2017 report, she does not explain how that would have made any difference as it does not appear to contain limitations other than those in the September 2017 report. *See* Docket Item 8-1 at 10-12.

treating neurologist who stated that the claimant presented with no physical findings, but rather only subjective complaints with no limitations." *Id.*

The ALJ failed to "explicitly" consider several of the *Burgess* factors before assigning only "partial weight" to Dr. Bavibidila's opinion. For example, the ALJ never acknowledged that Dr. Bavibidila had treated Brown at least ten times over the course of two years. The ALJ thus failed to "explicitly" consider "the frequency, length, nature, and extent of [Dr. Bavibidila's] treatment." *See Greek*, 802 F.3d at 375.

Moreover, while the ALJ rejected some of Dr. Bavibidila's opinions as not supported by "the objective physical findings of record made during and for the course of treatment," he never said what those "physical findings" were. *See* Docket Item 7 at 80. And although the ALJ partially rejected Dr. Bavibidila's opinion because he found it to be "inconsistent with that of the treating neurologist"—who, as explained above, appears to be Dr. Meyers—the ALJ did not analyze Dr. Meyers's opinion or explain why he valued it over Dr. Bavibidila's opinion. In particular, the ALJ did not explain why, in assessing in Brown's functional limitations stemming from "knee tenderness" and "joint instability," he valued the opinion of a neurologist who had seen Brown only twice over that of a primary care physician who had seen Brown at least ten times over the course of two years. Even worse, the ALJ did not explain why the opinion of a neurologist who

had treated Brown for "pain behind the right ear" and "bilateral hand pain," *see id.* at 457-65, was relevant to Brown's "knee tenderness" and "joint instability."[5]

Finally, the ALJ failed to explicitly address "the amount of medical evidence supporting the opinion," *Greek*, 802 F.3d at 375, except to note summarily that Dr. Bavibilila's opinion was "consistent with the claimant having limitation due to pain and decreased mobility," Docket Item 7 at 80.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e*., whether the record otherwise provides 'good reasons' for assigning '[partial] weight'" to Dr. Bavibidila's opinion. *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The Court finds no such assurance here.

---

[5] This is not to say that it was definitively error for the ALJ to give more weight to Dr. Meyers's opinion than Dr. Bavibidila's opinion. But the ALJ must construct "an accurate and logical bridge" between his recitation of the facts and the conclusions he reached. *See Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). The ALJ's failure to do so frustrates this Court's efforts to "assess the validity of the agency's ultimate findings and afford [Brown] meaningful judicial review." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)).[6] In fact, the ALJ's RFC finding may not be entirely consistent with Dr. McWatters's opinion, which found that Brown could "[s]tand and/or walk" for "about 6 hours in an 8-hour workday" and "[s]it" for "about 6 hours in an 8-hour workday." Docket Item 7 at 627. So Dr. McWatters seems to say that Brown can stand and/or walk for a *total* of six hours in an eight-hour workday, whereas the ALJ found that Brown could stand and/or walk for six hours *each*. The ambiguity caused by the use of "and/or" makes it difficult—indeed impossible—to tell whether the ALJ and Dr. McWatters were saying the same thing. Regardless, they both were saying something different than the opinion of the treating physician, and the error stems from that discrepancy.

As noted above, Dr. Bavibidila opined that Brown could sit, stand, and walk no more than 2-4 hours each in an eight-hour workday. *See* Docket Item 7 at 484. As Brown observes, "if Dr. Bavibidila's opinion is taken to mean that, even . . . on some days, [Brown] could . . . sit, stand, and walk for a *total* of only *six* hours in an eight-hour workday, that would preclude all full-time work." Docket Item 8-1 at 14 (first emphasis added; second in original) (citing SSR 96-9p, 1996 WL 374185, at *2 (July 2, 1996)). The ALJ instead credited Dr. McWatters's opinion and found that that Brown could "sit[,] stand[,] and/or walk[ ] for a total of six hours *each* during [an] eight hour work day." *See* Docket Item 7 at 78, 80 (emphasis added).[6] But Dr. McWatters never even laid eyes on Brown, and the ALJ failed to give any good reasons why he credited Dr. McWatters's opinion over that of a physician who had treated Brown many times over several years. *See Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) ("A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis.").[7]

[6] In fact, the ALJ's RFC finding may not be entirely consistent with Dr. McWatters's opinion, which found that Brown could "[s]tand and/or walk" for "about 6 hours in an 8-hour workday" and "[s]it" for "about 6 hours in an 8-hour workday." Docket Item 7 at 627. So Dr. McWatters seems to say that Brown can stand and/or walk for a *total* of six hours in an eight-hour workday, whereas the ALJ found that Brown could stand and/or walk for six hours *each*. The ambiguity caused by the use of "and/or" makes it difficult—indeed impossible—to tell whether the ALJ and Dr. McWatters were saying the same thing. Regardless, they both were saying something different than the opinion of the treating physician, and the error stems from that discrepancy.

[7] Brown also argues that the ALJ failed to properly analyze the opinion of Polina Barabash, P.A., under the treating-physician rule. Docket Item 8-1 at 16-17. But as the Commissioner observes, Ms. Barabash is a physician's assistant and therefore "not an 'acceptable medical source' as defined in the regulations applicable to [Brown]'s claim." Docket Item 15-1 at 24. Thus, the ALJ was not obligated to apply the treating-physician rule to Ms. Barabash's opinion.

For all those reasons, this Court finds that the ALJ erred and remands this matter for proper evaluation of Dr. Bavibidila's and Dr. Meyers's opinions.[8]

## **CONCLUSION**

For the reasons explained above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Brown's motion for judgment on the pleadings, Docket Item 8, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: September 25, 2020
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

[8] The Court "will not reach the remaining issues raised by [Brown] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").